## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Donovan Johnson, | ) | |
| | ) | |
| Plaintiff, | ) | Case 20 C 6500 |
| | ) | |
| vs. | ) | Judge Andrea R. Wood |
| | ) | |
| Lt. Tamara Anderson, et. al, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Defendants, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, present the following Memorandum in Support of their Motion for Summary Judgment and state as follows:

### INTRODUCTION

Plaintiff, Donovan Johnson ("Plaintiff"), was a pretrial detainee at Cook County Department of Corrections ("CCDOC") (SOF at ¶1.) Plaintiff alleges Defendants Lt. Anderson, Lt. Ludwig, Inv. Johnson, Inv. Garcia, Ofc. McSwain, and Ofc. Parker used excessive force, while Defendants Sgt. Day, Ofc. Mendoza, and Ofc. Serrano failed to intervene on December 30, 2017. (Dkt. 9.) Plaintiff filed his original complaint under case number 19-cv 04663 on August 21, 2019. (Dkt. 6, Case No.19-cv-4663). Plaintiff's complaint was subsequently dismissed for want of prosecution. Plaintiff then waited almost a year after dismissal to file a new complaint on November 2, 2020 in the above-captioned case. (Dkt. 8.) Plaintiff amended his complaint on February 8, 2021. (Dkt. 9.)

Summary judgment should be granted because Plaintiff's claims are barred by the statute of limitations and no equitable doctrine can save them. Additionally, based on the evidence, Plaintiff cannot prove his claims for excessive force and failure to intervene. Defendants are also

entitled to qualified immunity. Therefore, Defendants respectfully request that the Court find in favor of Defendants on all claims because no question of fact exists for the jury to consider.

## STATEMENT OF FACTS

On December 10, 2016, prior to entering CCDOC, Plaintiff was involved in a motor vehicle collision, where he was treated for injuries he sustained during the accident, including his lower and upper back. (SOF at ¶15.) Plaintiff was involved in a second motor vehicle accident, prior to entering CCDOC, where he sustained injuries to his back. (SOF at ¶16.) On August 31, 2017, Plaintiff entered CCDOC. (SOF at ¶17.) During his detainment at CCDOC, Plaintiff was assigned to Division 4 Tier K2 from November 18, 2017 until 2:23 pm on December 30, 2017. (SOF at ¶18.) Plaintiff was then reassigned to Division 4 Tier L1 at 3:00 pm on December 30, 2017. (SOF at ¶19.) During his detention at CCDOC, Plaintiff was found guilty for 12 separate incidents that resulted in discipline due to violations of CCDOC rules, including disobeying orders from CCDOC sworn staff members and for fighting. (SOF at ¶¶20-21.) On January 1, 2018, Plaintiff submitted a 9-page grievance regarding an incident that occurred on December 20, 2017(SOF at ¶22.)

**Policies of the Cook County Sheriff's Office.**

The Cook County Sheriff has a Use of Force ("UOF") Policy which sets guidelines and instructions for Sheriff's staff members to follow. (SOF at ¶30.) The UOF Policy instructs that the primary objective of use of force is to ensure control of a subject with only the amount of reasonable force necessary based on the totality of circumstances and to gain compliance of the subject as safely and quickly as possible. (SOF at ¶30.) The Policy further defines terms related to the subject of use of force. (SOF at ¶¶31-38.)

Pursuant to the Cook County Sheriff's UOF Policy, officers are authorized to use only the amount of force necessary to effect lawful objectives. (SOF at ¶36.) The determination of what is

or is not reasonable force is based on each individual situation and is a decision that the involved officer must make based on the totality of the circumstances. (*Id*.) Use of force does not include un-resisted handcuffing or un-resisted shackling of subjects for movement purposes, routine transportation, un-resisted searches, or the use of general security devices that include but are not limited to approved waist restraint system (blue box and belly chains), flexible handcuffs (zip cuffs). (SOF at ¶37.) The Cook County Sheriff's UOF Policy provides guidelines and instructions on situations where use of force is pre-planned. (SOF at ¶ 38.)

The Cook County Sheriff has a policy which sets forth guidelines and instructions for use of Oleoresin Capsicum ("OC") Devices. (SOF at ¶39.) Cook County Sheriff's Office shall decontaminate individuals who have been sprayed with OC spray pursuant to procedures set forth in the current order regarding the use of OC spray. (SOF at ¶40.) Moreover, officers shall ensure any inmates involved in use of force incidents are referred for a medical and mental health screening by utilizing the Inter-Agency Health Inquiry Form. (SOF at ¶41.)

**The December 30, 2017 Incident.**

On December 30, 2017, at approximately 2:30p.m., after Plaintiff returned from recreation, he complained to tier officers on the second shift that various personal belongings were missing from his cell. (SOF at ¶42.) The second shift tier officers were only able to recover some of Plaintiff's attorney mail. (SOF at ¶43.) The tier officers notified Plaintiff that he would be moving housing to Tier L1, and he was relocated to visit/interview room D in Division 4. (SOF at ¶44.) At approximately 3:00p.m., officers scheduled to work the third shift—which begins at 3:00p.m. and ends at 11:00p.m.—reported for duty. (SOF at ¶45.) Defendants reported for duty at 3:00 pm. (*Id*.) At 3:15p.m., Lt. Anderson went to speak Plaintiff in Attorney Room D in Division 4. (SOF at ¶46.)

3

Plaintiff advised that he was missing personal items and he was not going to go to another living unit without his missing items. (SOF at ¶47.)

Lt. Anderson and Inv. Garcia searched Division 4 Tier K2 for Plaintiff's missing items and exhausted all feasible efforts to locate Plaintiff's personal items. (SOF at ¶48.) Lt. Anderson returned to the attorney room to inform Plaintiff his items were not recovered. (SOF at ¶49.) Plaintiff then made violent statements towards Lt. Anderson when he realized he would need to leave the tier without his personal belongings that he wanted to take with him (Id.) Plaintiff stated to Lt. Anderson, "y'all gone have to mace me, and send me to Stroger or something. Y'all gone need them green boys to get me anywhere without my pictures. I'm not a regular inmate, I'm a habitual criminal. I've been in here for attempt murders and shit, I'm not going!"(Id.) Lt. Anderson left Plaintiff in the attorney room after he stated he would not leave the room to transfer to his new living unit. (SOF at ¶50.) Lt. Anderson evaluated the situation with Plaintiff, created a team, and prepared a plan of action for use of OC spray in order to remove Plaintiff from the attorney room to transfer housing. (Id.) Lt. Anderson informed medical staff that a preplanned use of force was about to take place. Lt. Anderson assigned Ofc. Mendoza, Inv. Johnson, Inv. Garcia, and Ofc. Parker to duties in order to assist with the preplanned used of force. (Id.) Defendants Lt. Ludwig, Ofc. McSwain, Ofc. Serrano, and Sgt. Day were present and assisted during the pre-planned use of force incident. (SOF at ¶¶51-67.)

The preplanned use of force on December 30, 2017 involving Plaintiff was captured and recorded with a handheld video camera on SD Card #634. (SOF at ¶51.) The video shows, at around 5:01 p.m., Lt. Anderson returns to the attorney room and opens the door to Plaintiff, who begins to immediately yell at her. (SOF at ¶52.) Then Plaintiff refused Lt. Anderson's multiple requests for him to comply with her orders to step out and exit the attorney visiting room to transfer

4

to his new assigned housing unit. (SOF at ¶53.) After further verbal requests were ignores, and Plaintiff refused to comply with all verbal orders, Lt. Anderson deployed one burst of OC spray to the facial area of Plaintiff. (SOF at ¶¶54-55.) Sgt. Day, Ofc. McSwain and Ofc. Serrano witnessed Lt. Anderson execute the Preplanned UOF involving Plaintiff after he was non-compliant to her orders. (SOF at ¶56.) Lt. Anderson gave Plaintiff instructions to step out the attorney room after he was sprayed with one burst of OC for decontamination, and he refused to comply once again with her orders. (SOF at ¶57.) Lt. Anderson instructed Ofc. Parker, Ofc. Johnson, and Inv. Garcia to remove Plaintiff from the room, in order to escort him to Tier 1N for decontamination. (SOF at ¶58.) As Defendants Ofc. Parker, Inv. Garcia, and Inv. Johnson began to escort Plaintiff out of the room, Plaintiff covered his face, dropped his weight to the ground, began flailing his arms in a violent manner, was kicking his feet, and would not allow officers to gain control of his body (SOF at ¶59.) Plaintiff was a moving resistor, who was making purposeful evasive movements with his body, in order for Inv. Johnson to handcuff him. (Id.)

Lt. Ludwig subsequently became present on the scene of the incident during Plaintiff's removal from the room, and ordered Inv. Johnson and Ofc. Parker to bring Plaintiff to his feet, in order to straighten his clothing and escort him to decontamination. (SOF at ¶60.) Plaintiff was brought to his feet and Lt. Anderson noticed that Plaintiff had items tucked in the front of his pants. (SOF at ¶61.) Defendants attempted to remove the items to confirm Plaintiff did not have a weapon, while Plaintiff remained combative and continued to resist. (SOF at ¶¶61-62.) As seen in the video, Lt. Ludwig instructed officers to lower Plaintiff to the ground so that Plaintiff's handcuffs could be redressed and properly secured behind his back. (SOF at ¶63.) Lt. Ludwig further secured Plaintiff's legs in shackles in order to gain compliance and control for safety. (SOF at ¶64.) After Plaintiff was secured, he was escorted by Defendants Inv. Johnson, Ofc. Parker, Inv.

Garcia, Sgt. Day, Lt. Anderson, and Lt. Ludwig to Tier 1N for decontamination. (SOF at ¶¶65-66.) Plaintiff was decontaminated with cool water and escorted to Medical staff already standing by awaiting Plaintiff's arrival to escort him to Cermak via a wheelchair on Tier 1N. (SOF at ¶67.) Plaintiff was seated in the wheelchair but attempted to slide himself off onto the floor. (SOF at ¶68.) Cermak staff referred Plaintiff to John H. Stroger Hospital ("Stroger Hospital") for further evaluation. (SOF at ¶70.)

At Stroger Hospital, Resident Physician Dr. Joshua Owen, MD and Attending Physician Dr. James Boron, MD examined, treated, and diagnosed Plaintiff based on his subjective complaints of a Blunt Head Trauma ("BHT") and Loss of Consciousness ("LOC"). (SOF at ¶71.) Dr. Owen and Dr. Boron kept Plaintiff overnight at Stroger Hospital to conduct tests including a Head and Spine CT and 23 hr. Neuro-checks due to his subjective complaints. from the incident. (SOF at ¶72.) Dr. Owen discharged Plaintiff back to CCDOC's custody on December 31, 2017 and noted in Plaintiff's Discharge Summary that both the Head CT and Spine CT came back negative and had no abnormal findings. (SOF at ¶¶73-74,76.) Dr Owen further documented Plaintiff's Neuro-checks were uneventful and diagnosed Plaintiff with no back or spiny injury. (Id.) Plaintiff was seen sporadically in 2021 and 2022 by medical providers via telehealth appointments over the phone at the Melrose Park Melrose Park Family Health Center. (SOF at ¶77.) Plaintiff was treated and evaluated due to his subjective complaints of headaches and migraines.( Id.)

## LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of*

*Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must view all facts and reasonable inferences supported in the record in favor of the nonmoving party. *Samuelson v. LaPorte Cty. Sch. Corp.*, 52 F.3d 1046, 1051 (7th Cir. 2008). "Although on summary judgment [courts] generally view the facts in the light most favorable to the nonmovant, in rare circumstances when video footage clearly contradicts the nonmovant's claims, [courts] may consider that video footage without favoring the nonmovant." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). A motion for summary judgment "requires the responding party to come forward with the evidence that it has—it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009).

## ARGUMENT

This Court should grant summary judgment in favor of Defendants for the following reasons: (1) Plaintiffs' claims are barred by the statute of limitations; (2) the evidence demonstrates the force used by Lt. Anderson, Lt. Ludwig, Inv. Johnson, Inv. Garcia, Ofc. McSwain, and Ofc. Parker was reasonable under the circumstances; (3) the evidence shows Plaintiff had no physical injury; (4) Sgt. Day, Ofc. Mendoza, and Ofc. Serrano did not need to intervene as no officer committed an act of excessive force against Plaintiff; and (5) Defendants are entitled to the defense of qualified immunity.

### I. Plaintiff's claims against Defendants are barred by the statute of limitations.

42 U.S.C. § 1983 ("Section 1983") provides no explicit statute of limitations. The limitations period is borrowed from the forum state's analogous personal-injury claims. *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007). In Illinois, the applicable statute of limitations for a Section 1983 claim is two years. *Licari v. City of Chi.*, 298 F.3d 664, 667-68 (7th Cir. 2002). For a statute of limitations defense, summary judgment is only appropriate if: (1) the statute of limitations has

run, thereby barring Plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which Plaintiff's claim has accrued and the application of the statute to the Plaintiff's claim which may be resolved in Plaintiff's favor. *See Hernandez v. Rhee*, No. 18-cv-07647, 2021 U.S. Dist. LEXIS 145884, at \*25 (N.D. Ill. Aug. 4, 2021). A claim of excessive force under Section 1983 "accrues immediately" at the time the alleged excessive force occurs. *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010).

The statute of limitations serves several purposes contemporaneously: (1) it forces parties to litigate claims while the evidence is fresh; (2) protects defendants from prejudice caused by the staleness of evidence; (3) protects the rights of defendants to fair and timely notice of claims against them; and (4) grants prospective defendants relative security by allowing them to better estimate their legal obligations. *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868 (1981); *Cook v. City of Chicago*, 192 F.3d 693, 695-696 (7th Cir. 1999).Here, there is no debate that Plaintiff did not file his claims against Defendants within the two-year statute of limitations period. Plaintiff's claims ran on December 30, 2019, two years after the date of the incident, December 30, 2017. Plaintiff's original *pro se* complaint filed on August 21, 2019 in Case No. 19-cv-4663 was timely, but that case was dismissed for want of prosecution on November 22, 2019. (Dkt. 11, 12, Case No. 19-cv-4663.) This gave Plaintiff approximately one month to refile his claims before the two-year statute of limitations expired. He failed to do so.

As the Seventh Circuit repeatedly has explained, "if the suit is dismissed without prejudice, remaining that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Elmore v. Henderson*, 227 F.3d 1009, 1010 (7th Cir. 2000); *see also Beck v. Caterpillar Inc.*, 50 F.3d 405, 407 (7th Cir. 1995) ("While his first

lawsuit was filed within the limitations period, that suit was voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a), and is treated as if it had never been filed"). This principle can have severe consequences, for "if the statute of limitations has run" at the time of the dismissal order, "the dismissal is effectively with prejudice," though it may be subject to the doctrine of equitable tolling. *Elmore*, 227 F.3d at 1011.

On November 2, 2020, with the assistance of counsel, Plaintiff filed this lawsuit naming Defendants, Thomas Dart, Cook County, Sgt. Dae (*sic*), Lt. Anderson and Unknown Officers, and alleged similar claims to Case No. 19-cv-4663, including excessive force, failure to intervene, and a state law claim of intentional infliction of emotional distress. (Dkt. 1.) On February 8, 2021, Plaintiff amended his complaint and named for the first time Defendants, Lt. Ludwig, Inv. Johnson, Ofc. Parker, Inv. Garcia, Ofc. McSwain, Ofc. Mendoza and Ofc. Serrano, alleging excessive force, failure to intervene, and a state law claim of intentional infliction of emotional distress (Dkt. 9.) Assuming no tolling or relation-back doctrine applies, Plaintiff's claims filed after December 30, 2019 are untimely because they are two years past the alleged incident on December 30, 2017.

### a. Equitable tolling does not apply because Plaintiff failed to exercise reasonable diligence.

Even if Plaintiff can show an equitable tolling doctrine applies, it would not save his untimely claims. For instance, the Illinois Savings Statute states: "where the time for commencing an action is limited, if … the action is dismissed for want of prosecution … then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff … may commence a new action within one year or within the remaining period of limitation, whichever is greater." 735 ILCS 5/13-217.

On March 31, 2023, the Court in its Memorandum and Opinion found that the statute applied here, and Plaintiff had one year from the date of the dismissal order, or November 22,

9

2020, to file his claims. (Dkt. 34. at pgs. 6-8.) However, Defendants, Lt. Ludwig, Inv. Johnson, Ofc. Parker, Inv. Garcia, Ofc. McSwain, Ofc. Mendoza and Ofc. Serrano were not named or identified prior to February 8, 2021, and were not served until February 26, 2021, well after the Illinois Savings Statute would have applied to Plaintiff's claims.

Similarly, the doctrine of equitable tolling permits Plaintiff to file suit after the statute of limitations expires if, through no fault or lack of diligence on his part, he was unable to sue before, even though the defendant took no active steps to prevent him from suing. *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548,561 (7th Cir. 1996). As the party seeking to utilize equitable tolling, Illinois law places the burden on Plaintiff to show: (i) that he pursued his rights diligently, and (ii) that some extraordinary circumstance stood in his way and prevented timely filing. *Clay v. Kuhl*, 727 N.E.2d at 223; *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Boulb v. United States*, 818 F.3d 334, 339-40 (7th Cir. 2016). "While equitable tolling is recognized in Illinois, it is rarely applied." *Am. Family Mut. Ins. Co. v. Plunkett*, 2014 IL App (1st) 131631, 383 Ill. Dec. 393, 14 N.E.3d 676, 681 (Ill. App. 1st Dist. 2014). It exists only "where a plaintiff was prevented from asserting his or her rights in some extraordinary way." *Ralda-Sanden v. Sanden,* 2013 IL App (1st) 121117, 371 Ill. Dec. 215, 989 N.E.2d 1143. "Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Id.* (citing *Thede v. Kapsas*, 386 Ill. App. 3d 396, 325 Ill. Dec. 97, 897 N.E.2d 345 (2008) (quotation omitted). Equitable tolling is granted sparingly. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930 (7th Cir. 2015). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).

To obtain the benefit of equitable tolling, Plaintiff must have established some effort to name the parties in interest prior to the expiration of the statute of limitations—and it is his burden to prove that he made such an effort. *See Freeman v. U.S. Postal Service*, 1991 U.S. Dist. LEXIS 16787, at *2 (N.D. Ill. Nov. 15, 1991) ("A presumption exists that the plaintiff could have filed within the statutory period, and he must show why he could not have learned of the deadline through due diligence"). Furthermore, "Illinois does not toll the statute of limitations for inmates" as a matter of course, "nor does it consider a lack of resources extraordinary to equitably toll the statute of limitations." *Barwicks v. Dart*, No. 14-cv-8791, 2016 U.S. Dist. LEXIS 80958, at *20 (N.D. Ill. June 22, 2016) (quoting *Bryant v. City of Chicago*, 746 F.3d 239, at 242 (7th Cir. 2014)).

At a minimum, this would have required Plaintiff to submit discovery requests seeking the names of any individual defendant he did not know, and if he did not receive responses to those requests, to file a motion to compel. *See Hines v. City of Chi.*, 91 Fed. Appx. 501, 503 (7th Cir. 2004). This would have included when Plaintiff was incarcerated while the statute of limitations was running and after Plaintiff was released. Plaintiff made no such efforts to discover all the identities of all the named Defendants while incarcerated when he filed his first complaint in Case No. 19-cv-4663, which was dismissed involuntarily on the merits by this Court for want of prosecution. (*See* Dkt. 11-12, Case No. 19-cv-4663.) Plaintiff never even served the two named defendants in that previously filed case. Once Plaintiff was released from incarceration and had time before the statute of limitations ran, he still did not attempt to issue any discovery.

Plaintiff eventually retained counsel in July 2020, but proceeded to wait to file suit until November 20, 2020. He then submitted a Freedom of Information Act ("FOIA") request after the filing of this lawsuit. This is insufficient for equitable tolling purposes. *See Dandridge v. Cook Cty.*, 2013 U.S. Dist. LEXIS 94527, 2013 WL 3421834, at *6 (N.D. Ill. July 8, 2013) ("But

Plaintiff's argument starts with the faulty premise that FOIA is a discovery tool…Plaintiff's counsel decision to use FOIA, rather than to file a suit or use multiple other available avenues…to identify the proper defendants, is not the fault of Defendants"). The record clearly reflects that Plaintiff's prior lawsuit was previously dismissed on the merits on November 22, 2019. Then Plaintiff waited eight months before hiring new counsel, who then waited an additional four months before filing suit on behalf of Plaintiff on November 2, 2020. Plaintiff's counsel then chose to issue a FOIA request instead of a subpoena or discovery request to identify the correct additional defendants. Therefore, no extraordinary circumstance exists here for equitable tolling to apply.

It is clear Plaintiff has frustrated the central functions underpinning the statute of limitations by intentionally waiting until after the limitations period to file and amend his complaint to name additional defendants. The Court should not reward this behavior. Because he cannot demonstrate the necessary degree of reasonable diligence, the Court should not apply equitable tolling Plaintiff's claims and should instead grant summary judgment.

### b. The relation-back doctrine does not apply here because Plaintiff does not meet the mistake elements required for its application.

Under Fed. R. Civ. P. 15(c)(1), relation back may apply when: "(a) the law that provides the applicable statute of limitations allows relation back; (b) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleadings; or (c) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in amendment."

Under Fed. R. Civ. P. 15(c)(1)(C), the Court also considers if the relation-back doctrine applies when examining whether the defendants knew or should have known that the action would have been brought against them but for a mistake concerning the proper party's identity. The

doctrine is applicable when an amendment is made that relates back to the original pleading that runs the statute of limitation, however it is limited to the occurrence as described in the original pleading. *Miller v. Illinois Bell Tel. Co.*, 157 F. Supp. 3d 749, 752 (N.D. Ill. 2016). The statute of limitations still applies and bars the application of relation back doctrine if the original pleading is filed after the statute of limitations as described in 735 ILCS 5/13-202, on personal injury cases for plaintiffs involved in criminal prosecution. *Id.*; 735 ILCS 5/13-202.

> **i.  Plaintiff does not meet the mistake requirement for the relation-back doctrine and Lt. Ludwig, Ofc. Johnson, Ofc. Parker, Ofc. Garcia, Ofc. McSwain, Ofc. Mendoza, and Ofc. Serrano were not on notice.**

Although Plaintiff named "Unknown Officers" in his new lawsuit, dated November 2, 2020, this is not enough to constitute a "mistake" within the purview of Fed. R. Civ. P. 15(c)(1)(C). "A plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of Federal Rule of Civil Procedure 15(c) such that the plaintiff could amend his complaint outside the statute of limitations period upon learning the defendant's identity. . . [a]ccordingly, once the statute of limitations period expires, [a plaintiff] cannot amend his complaint to substitute a new party in place of 'John Doe.'" *Gomez v. Randle*, 680 F.3d 859, 864, n.1 (7th Cir. 2012) (internal citation omitted); *see also Mohamed v. WestCare Ill., Inc.*, 786 Fed. Appx. 60, 61 (7th Cir. Nov. 26, 2019); *Flournoy v. Schomig*, 418 F. App'x 528, 532 (7th Cir. 2011); *Vance v. Rumsfeld*, 701 F.3d 193, 211 (7th Cir. 2012) (Wood, J., concurring). Plaintiff bore the burden of determining the correct defendants and doing so before the statute of limitations ran. *See Donald*, 95 F.3d at 562.

The Seventh Circuit has previously recognized that Rule 15(c)'s "mistake" clause does not apply when the plaintiff "simply lacks knowledge of the proper defendant." *Herrera v. Cleveland*, 8 F.4th 493, 496-97 (7th Cir. 2021); *Gomez*, 680 F.3d at 864 (noting that in a John Doe case, a "plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of

Federal Rule of Civil Procedure 15(c)"); *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993) (explaining that a plaintiff's "lack of knowledge" as to the defendants' identities does not amount to "a mistake in their names").

Here, Plaintiff chose to name "Unknown Officers" due to his lack of knowledge regarding their identities. However, this does not save his claims against these "Unknown Officers" from the applicable statute of limitations period. Plaintiff did not suffer a misconception, misunderstanding, or erroneous belief when he waited to name Defendants Lt. Ludwig, Inv. Johnson, Ofc. Parker, Inv. Garcia, Ofc. McSwain, Ofc. Mendoza and Ofc. Serrano until February 8, 2021. (Dkt. 9.) Nor was the naming of "Unknown Officers" a mere slip of the pen, and such an intentional and informed decision cannot amount to a mistake.

Moreover, Defendants Lt. Ludwig, Inv. Johnson, Ofc. Parker, Inv. Garcia, Ofc. McSwain, Ofc. Mendoza and Ofc. Serrano had no reason to be on notice of this action and have been prejudiced in defending these untimely claims against them. Likewise, they did not know that this action would have been brought against them when Plaintiff included "Unknown Officers" as a placeholder party. (SOF at ¶¶79-80.)

As a result, Plaintiff cannot provide any valid excuse as to why an amendment to the original claim on the grounds of mistake can be properly applied using the relation-back doctrine under Fed. R. Civ. P. 15(c)(1)(C). Therefore, it is evident that relation back doctrine does not apply in this case and alternatively, the Court should grant summary judgment in favor of Lt. Ludwig, Inv. Johnson, Ofc. Parker, Inv. Garcia, Ofc. McSwain, Ofc. Mendoza and Ofc. Serrano.

## II. Defendants' use of force against an actively defiant detainee was objectively reasonable and does not constitute a constitutional violation.

The Fourteenth Amendment Due Process Clause protects a pretrial detainee from the use of excessive force. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). The succeed on this

type of claim, Plaintiff must prove the force used was objectively unreasonable. *Id.* at 2473. "Objective unreasonableness turns on the facts and circumstances of each particular case." *Id.* (internal citations omitted). In determining reasonableness, the Court considers "the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Id.* The Court must consider "the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal citations omitted). Moreover, the Court considers "the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* "Officers facing disturbances are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 2474 (internal citations removed). "[E]ven an excessive force claim under the Fourteenth Amendment must involve more than *de minimis* force." *Davis v. Phillips*, 2012 U.S. Dist. LEXIS 35900, at *16, 2012 WL 912857 (C.D. Ill. March 14, 2012) (citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)). An officer is not required to use the least amount of force possible to restrain an inmate. Rather, the force must be reasonable under the circumstances. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). *Harris v. Ealey*, No. 19-cv-2210, 2021 U.S. Dist. LEXIS 234926, at *13 (N.D. Ill. Dec. 8, 2021). Officers do not have the luxury of time, and they do not act in an adrenaline-free environment. Officers must make split-second decisions about the use of force in tense, uncertain, and rapidly evolving environments. *See Dockery*, 911 F.3d at 464.

a. **Defendants Lt. Anderson, Lt. Ludwig, Inv. Johnson, Inv. Garcia, Ofc. Parker, and Ofc. McSwain's use of force was objectively reasonable and does not amount to a constitutional violation.**

15

In his excessive force claim, Plaintiff alleges that Lt. Anderson sprayed in him the face with OC spray, and then Lt. Ludwig, Inv. Johnson, Ofc. Parker, Inv. Garcia, and Ofc. McSwain slammed him to the ground. (Dkt. 9. at pg. 5-7.)

At the summary judgment stage, the question is whether a reasonable jury could find a use of force was objectionably unreasonable. This question depends on such factors: (1) the relationship between the need for the force and the amount used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Kingsley*, 135 S. Ct. at 2473 (citation omitted). More specifically, the question is what a reasonable officer on the scene would have understood in that moment, without the benefit of hindsight. *Id.*

In this case, even viewing all the evidence in the light most favorable to Plaintiff, a reasonable fact finder could not conclude these Defendants' use of force was objectively unreasonable when using the *Kingsley*'s factors. First, considering the existing danger, Plaintiff was non-compliant, actively hostile, and defiant when he refused to be handcuffed and refused to change housing assignments after multiple direct requests from sheriff staff members, including certain Defendants. (SOF at ¶¶37-53.) The objective video evidence shows Plaintiff stating that he will not step out the attorney room to transfer to new housing and that officers will need to "spray him or send him to Stroger Hospital" if they want him to come out of the room. (SOF at ¶52.) Even more concerning, Plaintiff slipped his handcuffs to the front position, which posed an even bigger threat for potential injury or attack to Defendants. (SOF at ¶64.) Throughout the entire incident, Plaintiff continually resisted Defendants' orders and attempts to handcuff him with violent movements, including kicking, flailing his arms, and other aggressive bodily movements. (SOF at

¶¶58-59.) Defendants were justified in the force they used to secure Plaintiff, remove the unidentified items hidden in Plaintiff's pants, and prevented further injury to officers and Plaintiff from injuring himself. (SOF at ¶¶60-63.) *See e.g. Stubblefield v. Jones*, 2015 U.S. Dist. LEXIS 58837, at *16-*2 (N.D. Ill. May 5, 2015) (finding when faced with an unsecured detainee having possession of a chain in his cell, the "Defendants were confronted with a security risk by Plaintiff's conduct, and they used reasonable force to eliminate the risk"); *Floyd v. Nelson*, 2002 U.S. Dist. LEXIS 12732, at *33-*36 (finding a push into metal hook under the circumstances had reasonable relationship between force used and security needed when detainee's conduct supported a threat.).

Additionally, Lt. Anderson was reasonable in the limited use of the OC spray. "When a detainee cannot be persuaded to obey an order, some means must be used to compel compliance because discipline in a correctional institution is essential if the prison is to function." *Stubblefield*, 2015 U.S. Dist. 58837 at *22 (citing *Burton v. Ruzicki*, 258 F. App'x 882, 885 (7th Cir. 2007)) (internal quotations removed). Plaintiff is seen on video being insubordinate and refusing multiple verbal commands to step out of the attorney room to transfer to his new housing assignment by Lt. Anderson. (SOF at ¶¶51-54.) Lt. Anderson had previously spoke with Plaintiff a few hours prior to the incident and informed him he was going to be transferring to new housing, and that is where Plaintiff told her he would refuse to leave the tier. (SOF at ¶¶37-38.) At that point, Lt. Anderson exhausted all efforts, which even included searching for Plaintiff's missing personal items in order to gain Plaintiff's compliance to transfer to his new tier. (SOF at ¶¶47, 49.) Lt. Anderson determined the use of OC spray would be needed in this situation in order to gain Plaintiff's compliance, and she properly enacted a preplanned use of force on December 30, 2017 per policies. (SOF at ¶¶32-36, 38, 49-55.) Based on Plaintiff's defiant actions, Lt. Anderson was justified in making the decision to compel compliance, maintain the safety of her fellow officers, and maintain

17

the security of the facility. Plaintiff was a moving resistor with irrational and aggressive behavior. (SOF ¶¶49-65.)

Furthermore, although courts can find excessive force where no injury occurs, the extent of injury is often evidence of the amount of force used. *Outlaw v. Newkirk*, 259 F.3d 833, 840 (7th Cir. 2001) ("the degree of injury is relevant to determining whether the use of force could plausibly have been thought necessary in a particular situation, and minor injury supports the conclusion that the incident was at most a de minimis use of force not intended to cause pain or injury to the inmate."). Although Plaintiff claims the force used caused back and head injuries, medical records do not support that Plaintiff's claimed injuries were caused by Defendants. No doctor ever diagnosed Plaintiff with any back or spine injury following the incident on December 30, 2017. (SOF at ¶74.) Plaintiff had multiple head CT's done between 2017 and 2022, all of which came back negative for abnormalities. (SOF at ¶¶73, 77.)

Likewise, Plaintiff has admitted that he had prior back injuries. (SOF at ¶¶15-16.) Plaintiff was involved in two prior motor vehicle accidents resulting in back injuries, one less than a year before the December 30, 2017 incident. (*Id.*) Plaintiff has also been involved in several jail fights, which resulted have injuries to his head. (SOF at ¶¶20-21.) Plaintiff even had one of these fights eight weeks prior to the incident in question in this case, which resulted in a head injury. (*Id.*) Plaintiff then continued to get into fights after the incident on December 30, 2017, and went to some sessions of physical therapy, only to verbalize how he was going to be able "to make so much money from this injury." (SOF at ¶¶21, 23-26.) It was noted by Physical Therapist Jamie Crothers that Plaintiff did not have any range of motion strength deficits and could ambulate independently, while he was observed during one of his sessions.(SOF at ¶24.) Plaintiff's medical records show Plaintiff's subjective complaints of headaches and migraines, which vary on and off

18

for many years. (SOF at ¶77.) Based on Plaintiff's previous back and head injuries, as well as his limited participation in physical therapy, no diagnosed back injuries, and inconsistent subjective complaints of head pain throughout the last six years, Plaintiff cannot attribute the cause of his alleged injuries in this lawsuit to the incident on December 30, 2017. More importantly, any force used was reasonably calculated to promote the safety and security of Plaintiff, Defendants, other detainees, staff, the facility as a whole and to avoid harm to Plaintiff. Based on the factors above, the use of force in this case was mild compared to the overwhelming need and was always objectively reasonable.

      **b. Sgt. Day, Ofc. Mendoza and Ofc. Serrano did not need to intervene to prevent harm to Plaintiff because they did not witness or suspect that any officer used excessive force.**

Plaintiff names Sgt. Day, Ofc. Mendoza, and Ofc. Serrano in his failure to intervene claim. A bystander may be held liable under Section 1983 if they "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring". *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). *Ramos v. Rodriguez*, No. 20 C 1001, 2022 U.S. Dist. LEXIS 16759, at *12-13 (N.D. Ill. Jan. 31, 2022).

Here, Plaintiff cannot prove his claim for failure to intervene against Ofc. Serrano, Sgt. Day and Ofc. Mendoza. First, these Defendants had no reason to know or suspect that any other officer present during the December 30, 2017 incident would use excessive force or commit a constitutional violation. In fact, these Defendants did not witness any excessive force used against Plaintiff, but only witnessed his non-compliance and combative behavior with other officers prior to force being used. (SOF at ¶78.) These Defendants further witnessed other Defendants exhaust all attempts to have Plaintiff comply with orders before any type of force was used. (SOF at ¶56.)

19

Sgt. Day, Ofc. Mendoza and Ofc. Serrano did not need to intervene to protect Plaintiff from any harm or excessive force because excessive force did not occur, as explained above. Regardless, these Defendants saw Plaintiff's defiant and noncompliant behavior, as clearly exhibited in the video footage. (SOF at ¶51.) Therefore, these Defendants had no reason to know that excessive force, or a constitutional violation, had occurred because the facts support that the force used was reasonable in light of Plaintiff's behavior and any intervention was unnecessary.

### III.    Defendants are entitled to qualified immunity.

Alternatively, Defendants are entitled to the defense of qualified immunity. "[T]he qualified-immunity doctrine gives enhanced deference to officers' on-scene judgments about the level of necessary force." *Dockery v. Blackburn*, 911 F.3d 458 466 (7th Cir. 2018) (internal quotations omitted). Plaintiff bears the burden of defeating this immunity by showing: (1) the facts as alleged make out a violation of a constitutional right; and (2) that right was clearly established at the time of Defendants' misconduct. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

Qualified immunity applies here because Defendants did not have fair warning that their conduct was unconstitutional. Plaintiff demonstrated evasive behavior and was actively resisting on December 30, 2017, exhibiting threatening behavior. (SOF at ¶¶58-65.) Plaintiff had no regard for the safety of any Defendants, or other civilians present, when he continuously struggled to be handcuffed and refused to be transferred to his new housing assignment, which is not permitted. (*Id.*) The circumstances certainly justified the non-deadly use of force employed here. Based on the evidence, no reasonable officer in this situation would understand that he or she was violating one of Plaintiff's constitutional rights by trying to subdue Plaintiff after he was given multiple opportunities to comply with orders and then continuously contorted his body in efforts not to be restrained in handcuffs. Accordingly, qualified immunity applies to all Defendants.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment as to all of Plaintiff's claims, along with fees and costs. Defendants also request any other relief the Court deems appropriate and oral argument, if deemed necessary, after briefing has concluded.

Respectfully submitted,
KIMBERLY M. FOXX
State's Attorney of Cook County

By: */s/ Jorie R. Johnson*
Jorie R. Johnson
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-7380
Jorie.Johnson@cookcountyil.gov

## CERTIFICATE OF SERVICE

I, Jorie R. Johnson, hereby certify that I have caused true and correct copies of the above and foregoing to be served on Plaintiff's counsel of record pursuant to ECF, in accordance with the rules of electronic filing of documents on this 14th day of July 2023.

*/s/ Jorie R. Johnson*
Jorie R. Johnson