**UNITED STATES DISTRICT COURT**
**FOR THE NORTHEARN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Donovan Johnson, | ) | |
| | ) | |
| Plaintiff, | ) | 20 CV 6500 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| Sheriff Thomas Dart, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S LOCAL RULE 56.1(B)(3) RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND LOCAL RULE 56.1(B)(3)(C) STATEMENT OF ADDITIONAL FACTS REQUIRING THE DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Donovan Johnson ("Plaintiff"), by his counsel, Saani Mohammed, hereby submits, pursuant to Local Rule 56.1(B)(3), his Response to Defendants' Statement of Material Facts in Support of Defendants' Motion for Summary Judgment.

**INTRODUCTION**

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See, Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"); see also *Phillips v. Quality Terminal Servs., LLC*., 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) ("Opinion, suggested inferences, legal arguments, and conclusions are not the proper subject matter of a [Local Rule 56.1] statement. Including legal arguments . . . is wholly improper, redundant, unpersuasive and irksome; in short, it advances neither the interests of the parties nor of th[e] court.") (citations omitted). In assessing a motion for summary judgment, a court may only consider admissible evidence. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citation omitted). This means that testimony used in support of a motion for summary judgment must be based on personal knowledge, *see, e.g., Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc*., 155 F.3d 883, 888 (7th Cir. 1998) (testimony "that was necessarily speculative

and lacking in foundation" is "insufficient" at summary judgment), and hearsay statements made during a deposition do not constitute adequate evidentiary support for a factual proposition, *see Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial . . . except that affidavits and depositions . . . are admissible in summary judgment proceedings to establish the truth of what is attested or deposed. Many of Defendants' purported facts fly in the face of the clear mandate of Local Rule 56.1 and lack support in admissible evidence. As the Court disfavors motions to strike, Plaintiff addresses his objections to the admissibility or effect of Defendants' evidence in its responses below.

## RESPONSE

*List of Exhibits*

a. Deposition Transcript of Plaintiff, Donovan Johnson, dated September 20, 2022.
b. Plaintiff's Booking Card.
c. Grievances of Plaintiff under Booking #20170831190.
d. Plaintiff's Bed Assignment Sheet under Booking #20170831190.
e. CCDOC Policy 102 – Use of Force.
f. CCDOC Policy 604 - Oleoresin Capsicum Devices.
g. Handheld Video Camera Footage of Incident on SD CARD #634 in Division 04 for incident #DIV4-2017-20613 on December 31, 2017, from approximately 05:01 p.m. to 05:07 p.m. (MTS format - 0h00mins - 0h06mins25s) (Chain of Custody Case: 1:20-cv-06500 Document #: 64 Filed: 07/14/23 Page 1 of 12 Page ID #:227 2 form for SD Card Filed on Docket with Blank Video Exhibit Sheet.)
h. Medical Records of Plaintiff from Cook County including Cermak Health and Stroger Hospital.
i. Medical Records of Plaintiff from University of Chicago Hospital.
j. Medical Records of Plaintiff from Melrose Park Family Health Center.
k. Cook County Sheriff's Office Incident Report #DIV4-2017-20613, dated December 31, 2017.
l. Deposition Transcript of Defendant, Investigator Daniel Johnson, dated October 25, 2022.
m. Deposition Transcript of Defendant, Christina Mendoza, dated October 26, 2022.

    n. Deposition Transcript of Defendant, Lieutenant Tamara Anderson, dated October 27, 2022.

    o. Deposition Transcript of Defendant, Officer Michael Parker, dated October 28, 2022.

    p. Deposition Transcript of Defendant, Investigator Martin Garcia, dated November 2, 2022.

    q. Deposition Transcript of Defendant, Lieutenant James Ludwig, dated November 2, 2022.

    r. Deposition Transcript of Defendant, Sergeant Olivia Day, dated November 3, 2022.

    s. Deposition Transcript of Defendant, Officer Delilah Serrano, dated November 3, 2022.

    t. Deposition Transcript of Defendant, Officer Crystal McSwain, dated December 5, 2022.

    u. Deposition Transcript of Defendant's Expert Witness, Dr. James Boron, dated April 23, 2023.

    v. Plaintiff's Disciplinary History under Booking #20170831190.

    w. Witness and Participant Statements from Pre-Planned Use of Force Dated December 30, 2017.

***Description of the Parties***

1. Plaintiff is a resident of Chicago, Illinois and a former pre-trial detainee of Cook County Department of Corrections ("CCDOC"). (Ex. A, at 10:3 – 10:5.)

2. On December 30, 2017, Plaintiff was incarcerated at CCDOC in Division 4, located at 2700 South California Avenue, Chicago, Illinois 60608. (Ex. B; Ex. D.)

3. On December 30, 2017, and at all relevant times herein, Defendant Lieutenant Tamara Anderson ("Lt. Anderson") was employed by CCDOC. At the time of the incident, Lt. Anderson's title and position was sergeant. (Ex. N, at 9:22 – 11:4.)

4. On December 30, 2017, and all relevant times herein, Defendant Lieutenant James Ludwig ("Lt. Ludwig") was employed by CCDOC. (Ex. Q, at 11:19 - 12:19.)

5. On December 30, 2017, and all relevant times herein, Defendant Sergeant Olivia Day ("Sgt. Day") was employed by CCDOC. (Ex. R, at 11:10 - 12:3.)

6. On December 30, 2017, and at all relevant times herein, Defendant Investigator Daniel Johnson ("Inv. Johnson") was employed by CCDOC. At the time of the incident, Investigator Johnson's title and position was correctional officer. (Ex. L, at 9:13 -10:8.)

7. On December 30, 2017, and at all relevant times herein, Defendant Investigator Martin Garcia ("Inv. Garcia") was employed by CCDOC. At the time of the incident, Investigator Garcia's title and position was correctional officer. (Ex. P, at 11:14 - 12: 19.)

8. On December 30, 2017, and at all relevant times herein, Defendant Officer Michael Parker ("Ofc. Parker") was employed by CCDOC. (Ex. O, at 10:6 – 10:21; 13:6 – 14:3.)

9. On December 30, 2017, and at all relevant times herein, Defendant Officer Crystal McSwain ("Ofc. McSwain") was employed by CCDOC. (Ex. T, at 10:16-10:24.)

10. On December 30, 2017, and at all relevant times herein, Defendant Officer Delilah Serrano ("Officer Serrano"), was employed by CCDOC. (Ex. S, at 11:23 – 12:20.)

11. On December 30, 2017 and at all relevant times herein, Defendant Officer Christina Mendoza ("Officer Mendoza"), was employed by CCDOC. (Ex. M, at 10:13 – 11:6.)

*Facts Supporting Venue and Jurisdiction*

12. Plaintiff's lawsuit is brought pursuant to the Civil Rights Act, 42 U.S.C. §1983 and the Fourteenth Amendment of the Constitution of the United States. (Dkt. 39, at pg. 2, ¶1.)

13. The jurisdiction of this Court is based on a federal question. 28 U.S.C. § 1331. (Dkt. 39, at pg. 2, ¶2.) Case: 1:20-cv-06500 Document #: 64 Filed: 07/14/23 Page 3 of 12 Page ID #:229

14. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because all the events giving rise to Plaintiff's claim occurred in this district. (Dkt. 39, at pg. 2, ¶4.)

*Undisputed Material Facts*

Plaintiff at CCDOC

15. On December 10, 2016, prior to entering CCDOC, Plaintiff was involved in a motor vehicle collision, where he was treated for injuries to his lower and upper back. (Ex. A, 14:14 – 14:25; 15:1 – 15:10; Ex. H, at pages bates stamped pages JOHNSON, D-20CV6500-001235- 001239; Ex. I, at pages bates stamped JOHNSON, D-20CV6500-001766-001862.)

Response: Plaintiff does not dispute that he was involved in an auto accident in 2016. However, Plaintiff disputes the defendants' characterization of his injury. He was treated for hand laceration and whiplash caused by his seatbelt. (Def. Ex. A, 14:14 – 14:25; 15:1 – 15:10; Def. Ex. H, at pages bates stamped pages JOHNSON, D-20CV6500-001235-001239; Ex. I, at pages bates stamped JOHNSON, D-20CV6500-001766-001862.)

16. Plaintiff was also involved in a second motor vehicle accident that caused injuries to his back. (Ex. A, 14:14 – 14:25; 15:1 – 15:10; Ex. H, at pages bates stamped pages JOHNSON, D-20CV6500-001235-001239; Ex. I, at pages bates stamped JOHNSON, D-20CV6500-001766- 001862.)

    Response: Plaintiff admits that he was involved in a second motor vehicle accident. However, his injury in that accident was a laceration to his hand. (Def. Ex. A, at 14:14-15:14; Def. Ex. I, at pages bates stamped JOHNSON, D-20CV6500-001766- 001862.)

17. On August 31, 2017, Plaintiff entered CCDOC as a pre-trial detainee. (Ex. B.)

    Response: undisputed

18. During his detainment at CCDOC, Plaintiff was assigned to Division 4 Tier K2 from November 18, 2017 until 2:23 p.m. on December 30, 2017. (Ex. D.)

    Response: undisputed

19. Plaintiff was reassigned to Division 4 Tier L1 at 3:00 p.m. on December 30, 2017. (Ex. D.)

    Response: undisputed

20. At CCDOC, Plaintiff was found guilty for 12 separate incidents that resulted in discipline due to violations of CCDOC rules, as set forth by the CCDOC inmate handbook. (Ex. W, at page bates stamped JOHNSON, D-20CV6500-000107-000153.)

    Response: Plaintiff admits that he was found guilty of various acts per his disciplinary report. However, the disagrees with the sentence because it is a factual argument.

21. Plaintiff has five guilty disciplinary violations, which include disobeying orders from CCDOC sworn staff members, and four guilty disciplinary violations, which include fighting infractions. (Ex. W, at page bates stamped JOHNSON, D-20CV6500-000107-000153.)

    Response: Plaintiff admits that he was found guilty of various acts per his disciplinary report. However, he objects to the sentence because it is a factual argument.

22. On January 1, 2018, Plaintiff submitted a nine-page grievance regarding an incident that occurred on December 20, 2017. Plaintiff stated in his grievance that he had property

5

taken when he was away from his tier, and he was then O/C. sprayed in a room after he refused to move housing. Plaintiff further stated he was removed from the room and slammed on the ground, while officers had their knees on his neck and back, and other officers watched but did nothing to assist him. (Ex. C, at page bates stamped JOHNSON, D-20CV6500-000006-000020.)

Response: Plaintiff agrees with the first sentence. However, Plaintiff disagrees with Defendants' oversimplification of the content of Plaintiff's January 1, 2018, grievance. In his grievance, Plaintiff stated that he was housed in division 4-2k. In the afternoon of December 30, 2017, he and other inmates were taken to the gym for a shake down. When he came back, his personal property, including mail and family pictures were missing. The first shift sergeant put him in the attorney visiting room so they could help locate his missing property. When the 3 to 11 shift took over, Sergeant Anderson and Sergeant Day saw him in the visiting room and thought he was there because he was causing trouble. However, he explained why he was in the visiting room to them. While he was waiting in the visiting room, Sergeant Anderson came to tell him that the officers threw away his property during the shake down. He insisted that his property could not be thrown away because they were not contraband. Around 5:30 pm or 6:00 pm, he was taken out of the visiting room to an open room without cameras or witnesses in handcuffs and was told to stop refusing. He was OC sprayed while he was in handcuff when he was not threatening any of the officers, his body was slammed to the floor by four male officers who put their weights on his back and neck, and was dragged on concrete floor with his pants down showing his buttocks even though he told them his back and neck were hurting and that he could not feel his right side. The officer dragged him to the shower room for decontamination with cold water without a nurse present. The paramedics had to come help him because he could not walk. He continued to explain that the officers used force to take him down while he was in handcuff and not being hostile to them. All he asked for was his property because he did not have a cellmate and did not take his own property. (Def. Ex. C, at page bates stamped JOHNSON, D-20CV6500-000006-000020.)

23. On May 31, 2018, during a follow up physical therapy appointment, Plaintiff told Physical Therapist Patrice Lassa "I know I am going to make lots of money from this injury." (Ex. H, at page bates stamped JOHNSON, D-20CV6500-000883.)

Response: Plaintiff agrees he made this statement to the therapist. However, defendants omitted the rest of what he told the therapist. During his May 31, 2018, visit with Physical Therapist Patrice Lassa, Plaintiff to him "my back is 10/10. I do not have the pain in my leg anymore; I have pain in the middle of my back at my waist. I have been some of the stretchers, but it is hard to do in the cell and it is hard to sit up straight. I

6

know I am going to make lots of money from this injury." (Def. Ex. H, at page bates stamped JOHNSON, D-20CV6500-000883.)

24. On January 8, 2018, Physical Therapist Jamie Crothers noted that although Plaintiff complained of lower back pain, he did not have any range of motion strength deficits, and Plaintiff was ambulating independently. (Ex. H. at pages bates stamped JOHNSON, D-20CV6500-000869- 000873.)

    Response: Plaintiff disagrees with this sentence as he did not have physical therapy session on January 8, 2018.

25. On February 20, 2018, Plaintiff refused to attend his scheduled physical therapy appointment. (Ex. H, at page bates stamped page JOHNSON, D-20CV6500-000874.)

    Response: undisputed.

26. On May 31, 2018, at physical therapy, Plaintiff could perform bed mobility, transfers and all functional movements with no guarding and had normalized gait speed and mechanics. At this time, Plaintiff had reached his maximum benefit of outpatient physical therapy and was no longer in need of physical therapy. (Ex. H, at bates stamped pages JOHNSON, D20CV6500-000883-000886.)

    Response: Plaintiff agrees that these were the notes of the physical therapist during his May 31, 2018, visit. However, the physical therapist also noted that Plaintiff continued to complain of pain and decreased flexibility. (Def. Ex. H, at bates stamped pages JOHNSON, D20CV6500-000883-000885.)

27. On December 30, 2017, Plaintiff requested to change his housing assignment as he did not feel safe on his tier after he returned from recreation time and found an item missing from his cell. (Ex. A. at 25:23 – 27:12.)

    Response: undisputed.

28. On January 3, 2018, Plaintiff was involved in an incident where he was belligerent, loud, and verbally aggressive towards staff and non-compliant with staff redirections. Plaintiff was constantly threatening to hit other detainees with his crutches if he was put in the cell with them and stated that he would sue the County should he fall and reinjure his back. Plaintiff dared the staff to touch him. Efforts to calm Plaintiff down and to retrieve his crutches by staff for safety reasons were not successful as he continued to be disruptive on the unit. (Ex. H, at page bates stamped JOHNSON,D-20CV6500-000846.)

Response: Plaintiff agrees those were the written notes of the nurse who saw him on January 3, 2018.

29. On January 4, 2018, Plaintiff was focused on suing the County for money due to reported back pain and made further threats to sue the County. (Ex. H, at page bates stamped JOHNSON, D-20CV6500-000459.)

Response: Plaintiff disagrees with the Defendant's claim that his focus was suing the county. According to his mental health professional, Kimberly Briney, Plaintiff was focused on obtaining medical housing in RTU or remain in the PSCU. (Def. Ex. H, at page bates stamped JOHNSON, D-20CV6500-000459.)

### *Cook County Sheriff's Office Policies*

30. The Cook County Sheriff's Policy defines the term use of force ("UOF") as the application of physical, chemical, or mechanical measures to compel compliance by an unwilling subject. The primary objective of the UOF policy is to ensure control of a subject with only the amount of reasonable force necessary based on the totality of the circumstances and to gain compliance of the subject safely and quickly. (Ex. E, at page bates stamped JOHNSON, D20CV6500- 000041.)

    Response: undisputed

31. The Cook County Sheriff's Policy defines excessive force as the application of an unreasonable amount of force in a given incident based on the totality of the circumstances. If an officer knows that another office is using excessive force against a subject, the officer must take appropriate action. The action required by the officer shall depend upon the circumstances of the incident. (Ex. E, at page bates stamped JOHNSON, D-20CV6500- 000039.)

    Response: undisputed

32. The Cook County Sheriff's Policy defines pre-planned UOF as an incident that does not require an immediate UOF response and may be contained without additional substantial risk to subject, officer or third parties. Whenever a situation occurs where UOF is pre-planned, a supervisor shall be assigned and respond to the incident, evaluate, plan, and prepare a plan of action which shall be written or verbalized including additional manpower, additional supervisory personnel, video recording equipment and other resources as necessary. (Ex. E, at pages bates stamped JOHNSON, D-20CV6500- 000040, 000043; Ex. M, at 29:10- 29:12; Ex. N. at, 43:8 - 43:18; Ex. O at 42:3- 42:21; Ex. P, at 52:17 – 53:4; Ex. Q, 39:14 – 39:21; Ex. R, at 37:16 - 37:23.)

    Response: undisputed

33. The County Sheriff's Office Policy defines a resister as a subject who does not respond to social or verbal control, but who does not act as an assailant. A resister is more difficult to control than a cooperative subjects. There are two types of resisters: moving and non-moving. A non-moving resister exhibits behaviors that do not attempt to flee or create distance but simply tries not to be moved. A moving resister moves away from the officer(s). The moving resister attempts to flee and avoid control by pulling away from officer(s). (Ex. E, bates stamped page JOHNSON, D-20CV6500-000869-000040; Ex. L, at 60:18 – 61:15; Ex. M, at 25:3 – 25:5; Ex. O, at 48:21- 48:24; Ex. P. 54:15 – 55:5.)

    Response: undisputed

34. The County Sheriff's Office Policy defines the phrase "totality of the circumstances "in the context regarding UOF as, describes facts and circumstances confronting the officer, at the time force is contemplated/used. Some of these factors include but are not limited to relative size/stature of the officer; distance from the subject; known history of violence by subject; mental status of subject; reasonable belief of harm to another or self; Subject(s) access to weapons; and Gender, age, physical attributes of subject. (Ex. E, at page bates stamped JOHNSON, D20CV6500-000869-000041.)

    Response: undisputed

35. The Cook County Sheriff's UOF Policy instructs that the primary objective of UOF is to ensure control of a subject with only the amount of reasonable force necessary based on the totality of circumstances and to gain compliance of the subject as safely and quickly as possible. (Ex. E, at page bates stamped JOHNSON, D-20CV6500-000869-000042.)

    Response: undisputed

36. Officers are authorized to use only the amount of force necessary to effect lawful objectives. The determination of what is or is not reasonable force is based on each individual situation and is a decision that the involved officer must make based on the totality of the circumstances. (Ex. E, at page bates stamped JOHNSON, D-20CV6500-000869-000042.)

    Response: undisputed

37. UOF does not include un-resisted handcuffing or un-resisted shackling of subjects for movement purposes, routine transportation, un-resisted searches, or the use of general security devices that include but are not limited to approved waist restraint system (blue box and belly chains), flexible handcuffs (zip cuffs). (Ex. E, at page bates stamped JOHNSON, D20CV6500-000869-000042.)

Response: undisputed

38. The Cook County Sheriff's UOF Policy directs staff that whenever a situation occurs where UOF is pre-planned, a supervisor shall be assigned and respond to the incident, evaluate, plan for and prepare a plan of action which shall be written or verbalized including: (a) additional manpower/specialized units;(b) additional supervisory personnel;(c) medical assistance;(d) equipment; (e) video recording equipment (if not used, supervisor shall provide a detailed explanation as to why video recording did not occur); and (f) any other necessary and available resources. (Ex. E, at pages bates stamped JOHNSON, D-20CV6500- 000040, 000043; Ex. M, at 29:10- 29:12; Ex. N. at, 43:8 - 43:18; Ex. O at 42:3- 42:21; Ex. P, at 52:17 – 53:4; Ex. Q, 39:14 – 39:21; Ex. R, at 37:16 - 37:23.)

Response: undisputed

39. A sworn member shall only use an Oleoresin Capscium (O/C) device consistent with the applicable policies, procedures, and current training. A supervisor or an authorized designee should record the incident leading up to and after the use of an OC device. (Ex. F, at pages bates stamped JOHNSON, D-20CV6500- 000030 – 000031; Ex. N, at 54:4- 54:6, 70:12 - 70:13; Ex O, at 41: 5 – 41:14.)

Response: undisputed

40. Cook County Sheriff's Office shall decontaminate individuals who have been sprayed with O/C spray pursuant to procedures set forth in the current order regarding the use of O/C spray. (Ex. E, at page bates stamped JOHNSON, D-20CV6500- 000045; Ex. N, at 71:2- 71:11, 72:5- 72:7.)

Response: undisputed

41. Officers shall ensure any inmates involved in UOF incident is referred for a medical and mental health screen utilizing the Inter-Agency Health Inquiry Form. (Ex. E, at page bates stamped JOHNSON, D-20CV6500- 000045.)

Response: undisputed

*The December 30, 2017 Incident*

42. On December 30, 2017, at approximately 2:30 p.m., Plaintiff returned from recreation and complained to officers on the second shift that various personal belongings were missing from his cell. (Ex. A, 27:1 – 27:6.)

   Response: Plaintiff agrees with the statement that he complained to officer about his missing belongings. However, the complaint was made to the first shift officers. (Def. Ex. A, 27:1 – 27:6.)

43. The second shift tier officers were only able to recover some of Plaintiff's mail. (Ex. A, at 27:1 – 27:19; Ex. K. at page bates stamped at page bates stamped JOHNSON, D20CV6500-000100.)

   Response: undisputed

44. The tier officers notified Plaintiff that he would be moving housing to Tier L1, and he was relocated to attorney visit/interview room D in Division 4. (Ex. A, at 27:1 – 27:19; Ex. K. at page bates stamped at page bates stamped JOHNSON, D-20CV6500-000100.)

   Response: Plaintiff disagrees with this sentence. Plaintiff was the one who asked the first shift officers to change his housing. (Def. Ex. A, at 27:- 27:19.)

45. On December 30, 2017, at approximately 3:00p.m., officers scheduled to work the third shift — which begins at 3:00p.m. and ends at 11:00p.m. — reported for duty. Certain Defendants reported for duty at 3:00 pm. (Ex. L, at 22:1 – 23:11; Ex. M, at 27:23 – 28:4; Ex. N, at 24:5 – 24:10; Ex. O, at 19:2 – 19:18; Ex. P, at 29:4 – 29:12; Ex. Q, at 19:1 – 19:9; Ex. R, at 25:5 -25:11; Ex. S, at 23:11 – 23:23; Ex. T, at 19:23 – 20:6.)

   Response: undisputed

46. At 3:15 p.m., Lt. Anderson went to speak Plaintiff in Attorney Room D in Division 4. (Ex. K, at page bates stamped JOHNSON, D-20CV6500-000100; Ex. N, at 30:8 – 30:18, 31:7 -31:16.)

   Response: undisputed

47. At this time, Plaintiff advised Lt. Anderson that he was missing pictures and other personal items. Plaintiff further stated that he was not going to go to another living unit without his missing items. (Ex. K, at page bates stamped JOHNSON, D-20CV6500-000100; Ex. N, at 30:8 – 30:18, 31:7 -31:16.)

   Response: Plaintiff agrees with the first sentence. Plaintiff disagrees that he told Lt. Anderson that he was not going to another living unit without his missing items. To the contrary, Plaintiff stated to Lt. Anderson and Sgt. Day that he needed to be moved to a different living unit because he did not feel safe with the inmates at the unit he was living in. (Def, Ex. A, at 26:17 – 31:8)

48. Lt. Anderson and Inv. Garcia searched Division 4 Tier K2 for Plaintiff's missing items and exhausted all feasible efforts to locate Plaintiff's personal items. (Ex. N. at 34:9 – 34:13; Ex. P. at 38:8 – 38:24.)

    Response: Plaintiff agrees that both Lt. Anderson and Inv. Garcia said they searched for Plaintiff's missing items. However, Plaintiff disagrees that the officers exhausted all feasible efforts to locate his personal items. Plaintiff specifically requested that the officers review the cameras to see who took his item and where they put them, and no officer did that. (Def. Ex. P. at 31:1 – 39:12.)

49. Lt. Anderson returned to the attorney room and informed Plaintiff his items were not recovered. Plaintiff then stated to Lt. Anderson, "y'all gone have to mace me, and send me to Stroger or something. Y'all gone need them green boys to get me anywhere without my pictures. I'm not a regular inmate, I'm a habitual criminal. I've been in here for attempt murders and shit, I'm not going!" (Ex. K, at page bates stamped JOHNSON, D-20CV6500-000100; Ex. N. at 34:14 -18, 41:11 – 42:23.)

    Response: Plaintiff disagrees with this entire paragraph. He never made those statements to Lt. Anderson or any other officer. To the contrary, he requested housing changes for his own safety. (Def. Ex. A. at 42:11 – 46:13.)

50. Lt. Anderson left Plaintiff in attorney room D after he stated he would not leave the room to transfer to his new living unit. Lt. Anderson then evaluated this incident, created a team, and prepared a plan of action for use of O/C spray in order to remove Plaintiff from the attorney room. Sergeant Anderson then informed the medical staff that a preplanned UOF was about to take place. Lt. Anderson assigned Ofc. Mendoza to record the video of the preplanned UOF. Lt. Anderson assigned Inv. Johnson, Inv. Garcia and Ofc. Parker to assist with executing the preplanned UOF. (Ex. K, at page bates stamped JOHNSON, D-20CV6500-000100, Ex. N, at 43:23 – 44:21.)

    Response: Plaintiff agrees with the first sentence to the extent that it correctly states that Lt. Anderson left Plaintiff in the attorney room D. However, Plaintiff never refused to be transferred to another living unit. Plaintiff does not have enough information to response to the rest of the sentences. (Def. Ex. A. at , 41:1-41:8, 43: 9– 46:13.)

51. The preplanned UOF was captured and recorded with a handheld video camera on SD Card #634. (Ex. G.)

    Response: Plaintiff agrees that some of the preplanned use of force was captured and recorded with a handheld video camera. However, not everything was captured because most of the defendants encounter with Plaintiff inside the holding room was blacked out, and the recording was stopped while the defendants were washing Plaintiff's face. (Def. Ex. G)

52. The video footage shows that around 5:01 p.m., Lt. Anderson opens the door of the attorney room and Plaintiff begins immediately yelling at the officers. (Ex. G, at "05:01 pm to 05:01 pm and 57 seconds" (0h00mins0s –0h00mins57s in MTS format.)

    Response: Plaintiff disputes the assertion that he was yelling at the officers. (Def. Ex. G.)

53. Plaintiff becomes agitated and refuses Lt. Anderson's multiple requests for him to comply with her orders to step out and exit the attorney visiting room to transfer to his new assigned housing unit. (Ex. G, at "05:01 pm to 05:01 pm and 57 seconds" (0h00mins0s – 0h00mins57s in MTS format.))

    Response: Plaintiff disagrees with the assertion that he refused to be transferred to a new housing unit. He never refused to move to a new housing assignment. (Def. Ex. A. at 43: 9– 46:13.)

54. Lt. Anderson gave Plaintiff several more verbal directives to exit the attorney visiting room. (Ex. C, at pages bates stamped JOHNSON, D-20CV6500-000019- 000020; Ex. K, at page bates stamped JOHNSON, D-20CV6500-000100; Ex. M, at 34:23 – 36:1; Ex. N, at 83:13 – 86:17; Ex. O, at 44:15- 44:20; Ex. P at 56:6 – 57:9; Ex. R, at 56:9 – 58:8, 72:5 – 73:3; Ex. X, at page bates stamped JOHNSON, D-20CV6500-001483,001489, 001493,001497.)

    Response: Plaintiff agrees with the assertion that Lt. Anderson asked him to get out of the attorney visiting room. However, he disagrees with the argumentative nature of the sentence.

55. When Plaintiff refused to comply with all verbal orders, Lt. Anderson deployed one burst of O/C spray to the facial area of Plaintiff. (Ex. C, at pages bates stamped JOHNSON, D20CV6500-000019- 000020; Ex. K, at page bates stamped JOHNSON, D-20CV6500-000100; Ex. M, at 34:23 – 36:1; Ex. N, at 83:13 – 86:17; Ex. O, at 44:15- 44:20; Ex. P at 56:6 – 57:9; Ex. R, at 56:9 – 58:8, 72:5 – 73:3; Ex. X, at page bates stamped JOHNSON, D-20CV6500-001483,001489, 001493,001497.) Case: 1:20-cv-06500 Document #: 64 Filed: 07/14/23 Page 8 of 12 Page ID #:234 9

    Response: Plaintiff objects to the argumentative nature of this sentence.

56. Sgt. Day, Ofc. McSwain and Ofc. Serrano witnessed Lt. Anderson execute a Preplanned UOF involving Plaintiff after he was non-compliant to Lt. Anderson's orders and other Officers attempts to escort him to his new housing assignment. (Ex. S, at 50:4-50:15; Ex. T, at 49:24 – 50:16; Ex. X., at pages bates stamped JOHNSON, D - 20 CV 6500 – 001495 – 001497.)

Response: Plaintiff agrees with that Sgt. Day, Ofc. McSwain and Ofc. Serrano witnessed Lt. Anderson OC spray him in the face. However, Plaintiff disputes the claim that any officers made any attempts to escort him to his new housing assignment before he was pepper sprayed. No officers made any efforts to escort him out of the attorney visiting room. (Plaint. Ex.1, at 2; Def. Ex. P, at 39: 13- 40:1; Def. Ex. N, at 48: 7- 48:21; Def. Ex. S, at 45:2-46:5.)

57. Lt. Anderson gave Plaintiff instructions to step out the attorney room after he was sprayed with one burst of OC for decontamination, and he refused to comply once again with her orders. (Ex. K. at pages bates stamped JOHNSON, D-20CV6500-000100-000101; Ex. L, at 28:11 -30:10, 40:23 – 41:10, 61:16 – 62:7, 63:20 – 65:23; Ex M, at 38:18 – 39:13, 43:5- 43:13; Ex. N, at 49:13 -52:5; Ex. P, at 40:2 -40:9, 41:23 – 42:23, Ex. Q, at 25:19 -26:1; 51:15 – 52:5; Ex. O, at 21:21 -21:23, 24:5 – 27:20; Ex. S, at 35:23- 36:1.)

Response: Plaintiff disagrees with this sentence. Plaintiff was on the floor of the attorney visiting room after he was sprayed with OC and did not have a chance to refuse any instructions. (Def. Ex. G.)

58. Lt. Anderson instructed Inv. Johnson, Ofc. Parker, and Inv. Garcia to remove Plaintiff from the room and escort him to Tier 1N for decontamination. As Ofc. Parker, Inv. Garcia, and Inv. Johnson began to escort Plaintiff out of the visiting room, Plaintiff covered his face with this thermal shirt, dropped his weight to the ground, and began flailing his arms in a violent manner. (Ex. G, at "05:02 pm 10 seconds to 05:02 pm and 31 seconds" (0h01mins10s – 0h1mins31s in MTS format); Ex. K. at pages bates stamped JOHNSON, D-20CV6500-000100- 000101; Ex. L, at 28:11 -30:10, 40:23 – 41:10, 61:16 – 62:7, 63:20 – 65:23; Ex M, at 38:18 – 39:13, 43:5- 43:13; Ex. N, at 49:13 -52:5; Ex. P, at 40:2 -40:9, 41:23 – 42:23, Ex. Q, at 25:19 - 26:1; 51:15 – 52:5; Ex. O, at 21:21 -21:23, 24:5 – 27:20; Ex. S, at 35:23- 36:1.)

Response: Plaintiff disagrees with these two statements. Plaintiff was dragged on the floor of the attorney visiting room by Ofc. Parker, Inv. Garcia, and Inv. Johnson. He never flailed his hands in any violent manner. He was covering his face from being sprayed with OC. (Def. Ex. G, Def. Ex. Q, 16:22- 17: 9.)

59. Plaintiff further began to kick his feet and would not allow Inv. Johnson to gain control of his body in order to handcuff him by becoming evasive with his arms. Plaintiff was a moving resistor failing to comply with officers' orders to exit the attorney room. (Ex. K. at pages bates stamped JOHNSON, D-20CV6500-000100- 000101; Ex. L, at 28:11 - 30:10, 40:23 – 41:10, 61:16 – 62:7, 63:20 – 65:23; Ex M, at 38:18 – 39:13, 43:5- 43:13; Ex. N, at 49:13 -52:5; Ex. P, at 40:2 -40:9, 41:23 – 42:23, Ex. Q, at 25:19 -26:1; 51:15 – 52:5; Ex. O, at 21:21 -21:23, 24:5 – 27:20; Ex. S, at 35:23- 36:1.)

14

Response: Plaintiff disagrees with these two sentences. Plaintiff never kicked any officers, and he was already handcuffed. He was a non-moving resister. (Plaint. Ex. 1, at 2; Def. Ex. G.)

60. Lt. Ludwig became present on the scene of the incident and ordered officers to bring Plaintiff to his feet, in order to straighten his clothing and escort him to decontamination. Plaintiff was brought to his feet by Ofc. Parker and Inv. Johnson. (Ex. K at page bates stamped JOHNSON, D-20CV6500-000100; Ex. N, at 49:19 53:2; Ex. Q, at 26:22 - 29:8; Ex. R, 27: 15 – 23.)

    Response: Undisputed
    (Def. Ex. A. at 43: 9– 46:13.)

61. Lt. Anderson then noticed that Plaintiff had items tucked in the front of his pants. All officers and sergeants attempted to remove the items to confirm Plaintiff did not have a weapon. (Ex. G, at "05:03 pm 18 seconds to 05:03 pm and 22 seconds" (0h02mins18s – 0h2mins22s in MTS format); Ex. K at page bates stamped JOHNSON, D-20CV6500-000100; Ex. N, at 49:19 53:2; Ex. Q, at 26:22 - 29:8; Ex. R, 27: 15 – 23.)

    Response: Plaintiff disagrees with these two sentences. Lt. Anderson already knew Plaintiff had his mails tucked in front of his pants. (Def. Ex. A, at 27:7- 31:1; Def. Ex. G).

62. Lt. Anderson, with the assistance of Inv. Garcia, Inv. Johnson, Ofc. Serrano, and Ofc. Parker attempted to remove the item from Plaintiff's waistband. (Ex. G, at "05:03 pm 18 seconds to 05:03 pm and 38 seconds" (0h02mins18s –0h2mins38s in MTS format); Ex. K at page bates stamped JOHNSON, D-20CV6500-000101; Ex. N. 58:7 – 59:14; Ex. P, at 43:14 – 44:8; Ex. Q, at 27:13 - 29:8, 29:23 -30:6; Ex. R, 27:19 – 24.) Case: 1:20-cv-06500 Document #: 64 Filed: 07/14/23 Page 9 of 12 Page ID #:235 10

    Response: undisputed.

63. Plaintiff became even more combative and aggressive while certain Defendants attempted to remove the items from his waistband. Plaintiff began to pull away and further resist the officers. (Ex. K at page bates stamped JOHNSON, D-20CV6500-000101; Ex. N. 58:7 – 59:14; Ex. P, at 43:14 – 44:8; Ex. Q, at 27:13 - 29:8, 29:23 -30:6; Ex. R, 27:19 – 24.)

    Response: Plaintiff disagrees with these two sentences. He was never aggressive or combative towards the defendants. (Def. Ex. G.)

64. As a result, as seen in the video Lt. Ludwig instructed officers to lower Plaintiff to the ground so that Plaintiff's handcuffs could be redressed and properly secured behind his

back. Plaintiff has slipped his handcuffs to the front position from being positioned behind his back. (Ex. G, at "05:04 pm 39 seconds to 05:05 pm and 43 seconds" (0h03mins18s –0h4mins43s in MTS format); Ex. K at page bates stamped JOHNSON, D-20CV6500-000101; Ex. Q. 27:13 – 29:8; Ex. T. 24:17 -25:4, 38:24 – 40:20, 43:15 – 44:7.)

Response: Plaintiff disagrees with these two sentences. Lt. Ludwig ordered other defendants to take Plaintiff down while plaintiff was already handcuffed. It is not true that Plaintiff slipped his handcuff to the front position. Plaintiff was handcuffed to the front when he was put in the attorney visiting room. (Def. Ex. G.)

65. Lt. Ludwig further secured Plaintiff's legs in shackles in order to gain compliance and control for safety. Plaintiff continued to resist officers as they secured his arms and legs. (Ex. K at page bates stamped JOHNSON, D-20CV6500-000101; Ex. Q. 27:13 – 29:8; Ex. T. 24:17 - 25:4, 38:24 – 40:20, 43:15 – 44:7.)

Response: Plaintiff agrees that Lt. Ludwig put him in shackles. However, Plaintiff was not in any position to resist when he was on the ground with the full body weights of multiple defendants on his back, legs, and neck. (Def. Ex. G; Def. Ex. S, 36:7-36:24.)

66. Plaintiff was then brought to his feet by Inv. Johnson and Ofc. Parker and escorted to Tier 1N for decontamination and a new uniform. ((Ex. G, at " 05:01 pm to 05:07 pm" (0h00mins0s –0h06mins24s in MTS format).)

Response: undisputed.

67. After Plaintiff was decontaminated with cool water and issued a new uniform, Plaintiff began to complain of back pain but refused to be escorted to the dispensary. (Ex. G, at "05:06 pm 57 seconds to 05:07 pm and 25 seconds" (0h05mins57s –0h6mins25s in MTS format); Ex. Q, at 31:13 – 31:24; Ex. X.)

Response: Plaintiff agreed that he was decontaminated with cold water. However, it is not true that he was issued new uniform. Plaintiff started complaining of back pain when the defendants had their body weights on his back. He continued to complain of back pains as he was being taken for decontamination. (Def. Ex. G.)

68. Medical staff already on standby was awaiting Plaintiff's arrival to escort him to Cermak via a wheelchair on Tier 1N. Plaintiff was seated in the wheelchair but attempted to slide himself off onto the floor. (Ex. Q, at 33:17 -34:2)

Response: Plaintiff disputes these two sentences. Plaintiff told the defendants he had back and neck pains and that he could not feel his "right side." He had difficulty walking. (Def. Ex. C, at bate stamped JOHNSON, D-20CV6500-000013.)

16

69. Plaintiff became loud and agitated once more. Cermak was notified, and paramedics arrived at Division 4 at approximately 5:45p.m. to transport Plaintiff to Cermak. (Ex. K, at pages bates stamped JOHNSON, D-20CV6500-000100 - 000101).

   Response: undisputed.

70. Cermak staff referred Plaintiff to John H. Stroger, Jr. Hospital ("Stroger Hospital") for further evaluation. (Ex. K, at page bates stamped JOHNSON, D-20CV6500-000100-000101).

   Response: undisputed

71. At Stroger Hospital, Resident Physician Joshua Owen and Attending Physician James Boron examined, treated, and diagnosed Plaintiff. (Ex. H, at pages bates stamped JOHNSON, D-20CV6500-001235-001246; Ex. U, at 19:11 – 21:4.)

   Response: undisputed

72. Dr. Owen and Dr. Boron kept Plaintiff overnight at Stroger Hospital to conduct tests including a Head and Spine CT and 23 hr. Neuro-checks. (Ex. H, at pages bates stamped JOHNSON, D-20CV6500-001235-001246.)

   Response: undisputed

73. Both Plaintiff's Head CT and Spine CT came back negative and had no abnormal findings. Dr Owen further documented Plaintiff's Neuro-checks were uneventful, and Plaintiff was cleared to be discharged on December 31, 2017, to return to CCDOC.( Ex. H, at pages bates stamped JOHNSON, D-20CV6500-001235-001246; Ex. U, at 48:9 – 50:6.)

   Response: Plaintiff agrees with the first sentence. Plaintiff also agrees with the first and second part of the second sentence, However, Plaintiff was prescribed pain medication, clutches and referred to physical therapy before being returned to Cermak. (Ex. H, at pages bates stamped JOHNSON, D-20CV6500-001235-001246; Ex. U, at 19:5 – 30:18.)

74. Plaintiff was not diagnosed with any back or spinal injury on December 30, 2017 (Ex. U, at 47:1 – 48:8)

   Response: Plaintiff disagrees that he was not diagnosed with a spinal injury on December 30, 2017. He was diagnosed with a blunt head trauma with loss of consciousness, and the associated symptoms included neck and back pains. He was prescribed clutches and

referred to physical therapy when he was discharged from the hospital, (Def. Ex. H, at pages bates stamped JOHNSON, D-20CV6500-000831-001235; Def. Ex. U, at 19: 5 – 30: 18)

75. Plaintiff had prior head injuries before December 30, 2017 incident. (Ex. H, at pages bates stamped JOHNSON, D-20CV6500-000831-000832, Ex. U, at 52:16 – 54:14.)

Response: Plaintiff disagrees with the claim that he had a head injury prior to December 30, 2017. He only sustained a face injury from an altercation with another detainee. Defendants' own expert, Dr. James Boron stated that Plaintiff had no head injury prior to December 30, 2017. (Def. Ex. H, at pages bates stamped JOHNSON, D-20CV6500-000831-000832; Def. Ex. U, at 30:4 – 30:18.)

76. Plaintiff was sent back to CCDOC on December 31, 2017. (Ex. H, at pages bates stamped JOHNSON, D-20CV6500-001235-001242.)

Response: Plaintiff agrees that he was sent back to CCDOC on December 31, 2017. However, he was housed at Cermak, the medical unit, so he could undergo physical therapy. (Def, Ex. H, at pages bates stamped JOHNSON, D-20CV6500-001235-001242.)

77. Plaintiff was seen sporadically in 2021 and 2022 by medical providers via telehealth appointments over the phone at the Melrose Park Family Health Center. Plaintiff was treated and evaluated due to his subjective complaints of headaches and migraines. Plaintiff received a head CT with a referral from the medical facility on May 11, 2022, and the results from the test showed no acute intercranial abnormality.( Ex. J.)

Response: undisputed.

78. Ofc. Serrano, Ofc. Mendoza, and Sgt. Day did not witness Ofc. Parker, Ofc. McSwain, Inv. Garcia, Inv. Johnson, Lt. Ludwig, or Lt. Anderson use any form of excessive force against Plaintiff on December 30, 2017. (Ex. M, at 55:3 - 60:7; Ex. R, at 68:20 – 69:20; Ex. S, at 52:1 -52:15.)

Response: Plaintiff disagrees with this statement. Ofc. Serrano, Ofc. Mendoza, and Sgt. Day witnessed other defendants use excessive force against Plaintiff. (Def. Ex. M; Def. Ex. R; Def. Ex. S.)

79. Lt. Anderson, Sgt. Day, Lt. Ludwig, Inv. Johnson, Inv. Garcia, Ofc. Serrano, Ofc. Mendoza, Ofc. McSwain, and Ofc. Parker had no notice of this lawsuit or knowledge of the claims alleged in this lawsuit by Plaintiff prior to March of 2021.( Ex. L, at 67:23 – 69:10; Ex N., at 86:18 – 88:5; Ex. M, at 60:8 – 61:8; Ex. O, at 44:21 -45:22; Ex. P, at

59:1 -59:24; Ex. Q, at 53:7 – 55; 44:17 – 45:8; Ex. R, at 73:8 -73:22; Ex. S, at 50:21 – 51:17, Ex. T, at 44:4 45:13.)

Response: Plaintiff disagrees with this statement. The defendants first learned of the claims alleged in this lawsuit on January 22, 2021. (Plaint. Ex. 3.)

80.  Defendants did not speak with, see any grievance submitted by Plaintiff, or have any interactions with Plaintiff after the incident on December 30, 2017. ( Ex. L, at 67:23 – 69:10; Ex N., at 86:18 – 88:5; Ex. M, at 60:8 – 61:8; Ex. O, at 44:21 -45:22; Ex. P, at 59:1 -59:24; Ex. Q, at 53:7 – 55; 44:17 – 45:8; Ex. R, at 73:8 -73:22; Ex. S, at 50:21 – 51:17, Ex. T, at 44:4 45:13.)

Response: Plaintiff has no information to respond to this statement. However, Plaintiff filed a grievance against all Defendants for their unlawful actions they took against him. (Def. Ex. C.)

        Respectfully Submitted,

        DONOVAN JOHNSON

**By:** */S/Saani Mohammed*
**Saani Mohammed, Esq.**

MOHAMMED-LAW LLC
73 W. Monroe Street, Suite 103
Chicago, Illinois 60603
T: 773-823-4343
E: saani@mohammedlawfirm.com

**CERTIFICATE OF SERVICE**

I, Saani Mohammed hereby certify that on September 27, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern

District of Illinois Eastern Division by using the CM/ECF system. I certify that in accordance with Fed. R. Civ. P. and LR 5.5 and the General Order on Electronic Case Filing (ECF)

                                                  **/S/*Saani Mohammed***
                                                  **Saani Mohammed, Esq.**